# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ADRIAN E. LUCERO,

    Plaintiff,

v.     CIV. NO. 05-0601 JP/WPL

CHRIS VALDEZ AND MARIO SALBIDREZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT DISCOVERY AND EXPERT TESTIMONY ON ISSUE OF QUALIFIED IMMUNITY

After being acquitted of trafficking in a controlled substance, Adrian E. Lucero commenced this suit against two New Mexico State Police Officers who participated in the investigation and prosecution of him for the crime. The Officers, Chris Valdez and Mario Salbidrez, have filed a Motion to Exclude Expert Discovery and Expert Testimony on Issue of Qualified Immunity. Having studied the motion, Lucero's response, the Officers' reply, the record, and the applicable law, I will deny the motion for the reasons explained below.

### FACTUAL AND PROCEDURAL BACKGROUND

### *Lucero's Allegations*

In his complaint, Lucero alleges that Valdez instructed Salbidrez to make a drug buy from a person named "Adrian" in Espanola. [Doc. 1 at 3] After buying the drugs, Salbidrez asked the seller for his name and phone number, and the seller handed him a piece of paper with the name "Adrian" and a number. *Id.* at 4. Salbidrez told Valdez that the seller said his name was "Adrian Lucero." *Id.* Valdez then contacted the New Mexico Motor Vehicle Division, which e-mailed him a photograph of Lucero. *Id.* at 4-5. Valdez printed the e-mailed photograph and gave it to Salbidrez, who

identified Lucero as being the seller. *Id.* at 5. Salbidrez later testified before the grand jury that he bought the drugs from Lucero. *Id.* at 6-7.

According to the complaint, Salbidrez unsuccessfully tried to complete calls to the phone number the seller gave him. *Id.* at 5. The Officers did not check telephone company records, which would have revealed that the phone number belonged to a person named Adrian Dominguez and that the pattern and volume of calls to the number were characteristic of drug dealers. *Id.* The Officers also failed to investigate Lucero's whereabouts at the time of the drug buy. Such an investigation would have indicated that Lucero was not in Espanola at that time. *Id.*

Lucero asserts that Salbidrez and Valdez caused him to be indicted, arrested, incarcerated, placed under house arrest, and tried for a crime he did not commit, all in violation of the Fourth Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. *Id.* at 1-2. He further asserts that the Officers actions went "beyond mere negligence" and constituted "deliberate, knowing, or callous indifference to [his] clearly established Constitutional rights." *Id.* at 3. In particular, Lucero claims that the indictment, arrest, incarceration, house arrest, and trial were

> caused by the intentional and/or deliberate investigation, supervision, and/or training by Valdez and/or Salbidrez . . . , which were objectively inadequate and contrary to clearly established law enforcement methods, standards, and practices governing criminal investigation and identification of persons engaging in criminal activity, and which violated clearly established statutory or Constitutional rights of Plaintiff of which a reasonable person would have known, whereas, if Defendants had followed clearly established law enforcement methods, standards, and practices, they would not have relied on Salbidrez's identification from a print of a Motor Vehicle Division emailed photo to name Plaintiff as the perpetrator, and they would have known that Plaintiff was not guilty of the crime charged, from telephone records and other information.

*Id.* at 8-11.

### *The Dispute Over Experts*

In their answer, the Officers asserted qualified immunity. [Doc. 10 at 8] While conferring about the initial pretrial report, the parties disagreed as to whether expert testimony is admissible regarding qualified immunity. [Doc. 17 at 13] Lucero wanted to have two experts in police procedure "testify as to practices, with respect to the investigation" that resulted in his arrest and prosecution "and as to practices, procedures, training, and supervision in the New Mexico State Police and in law enforcement, generally." *Id.* at 22-23. The Officers opposed this testimony. The parties agreed to have me decide whether discovery regarding qualified immunity "will encompass expert reports and depositions and whether expert testimony may be submitted by the parties on the qualified immunity motions and responses to be filed by the parties." *Id.* at 13.

### **RELEVANT LAW**

### *Scope of Discovery When Qualified Immunity Has Been Asserted*

Qualified immunity applies to government officials performing discretionary functions if their conduct does not violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because it is an immunity from suit, not merely a defense to liability, defendants who are entitled to qualified immunity should not have to endure the "burdens of broad-reaching discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow*, 457 U.S. at 817). This does not mean, however, that defendants who plead qualified immunity are exempt from all discovery. *Maxey v. Fulton*, 890 F.2d 279, 282 (10th Cir. 1989). They are exempt only from discovery that is "avoidable or overly broad." *Id.* Discovery is avoidable or overly broad when the defendants are clearly entitled to qualified immunity or when it is "designed to flesh out the merits" of the plaintiff's claim. *Id.* But "[d]iscovery orders entered when the

defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable or overly broad." *Id.*

The plaintiff must demonstrate how any proposed discovery is relevant to qualified immunity. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1387 (10th Cir. 1994). Therefore, to decide whether a particular type of discovery should be allowed, it is necessary to understand the burden that the plaintiff bears to overcome an assertion of qualified immunity.

When the defendants move for summary judgment on the basis of qualified immunity, the plaintiff must produce facts sufficient to show that the defendants' conduct violated a constitutional right and that the right was clearly established when the violation occurred. *See Gross v. Pirtle*, 245 F.3d 1151, 1155-56 (10th Cir. 2001); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991). This objective standard precludes any consideration of the defendants' intent as it relates to knowledge of the law, but does not preclude consideration of the defendants' intent when their state of mind is an essential element of the plaintiff's substantive claim. *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998); *Bruning*, 949 F.2d at 356.

When state of mind is an element of the plaintiff's claim, defendants moving for summary judgment on the basis of qualified immunity must make a prima facie showing that their conduct was objectively reasonable. *Bruning*, 949 F.2d at 356-57. Once the defendants make this showing, the plaintiff can defeat the summary judgment motion only by producing specific evidence that the defendants had a culpable state of mind. *Id.* at 357.

*Admissibility and Relevance of Expert Testimony Regarding Qualified Immunity*

Expert testimony is admissible if it meets the requirements of Rule 702 of the Federal Rules of Evidence. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The Tenth Circuit has issued several qualified immunity opinions in which expert testimony was admitted.

In *Bruning*, the plaintiff brought a § 1983 action against two police officers who drafted affidavits in support of a warrant for his arrest and in support of an order for nontestimonial identification. 949 F.2d at 354-55. The plaintiff asserted that the affidavits contained material false statements and omissions that were made intentionally or with reckless disregard for the truth. *Id.* at 355.[1] The Tenth Circuit noted that to establish recklessness, the plaintiff had to prove that the defendants entertained serious doubts as to the truth of their allegations and that recklessness could be inferred from the omission of facts that were clearly critical to a finding of probable cause. *Id.* at 357. The defendants filed a motion for summary judgment on the basis of qualified immunity. *Id.* at 354. Because their state of mind was an element of the plaintiff's claim, they were required to make a prima facie showing that their actions were objectively reasonable. *Id.* at 357. Instead of attempting to make this showing, the defendants simply argued that the plaintiff could not establish their culpable state of mind and that any false statements or omissions were not material to a finding of probable cause. *Id.*

The court concluded that while the defendants failed to make their prima facie showing, the plaintiff presented evidence raising an inference that the defendants acted recklessly. *Id.* Among the

---

[1] The law is clearly established that an officer violates the Fourth and Fourteenth Amendments by knowingly or recklessly including false information or omitting relevant information in an arrest affidavit if the information is material to the finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990).

evidence cited by the court was an affidavit by an expert witness, who "opined that under the circumstances, the information relied upon by [one of the defendants] in the preparation of the affidavit for issuance of an arrest warrant was so obviously contraindicated . . . that to include it in the affidavit without qualification or explanation constitutes a deviation from what an objective and reasonable police officer would consider appropriate in like circumstances." *Id.* at 360.

In a later unpublished case, the plaintiff, like the plaintiff in *Bruning*, sued a police officer who drafted the arrest affidavit. *See White v. Kluth*, No. 98-1196, 1999 WL 393645 (10th Cir. June 16, 1999). The plaintiff failed to offer any evidence to support his allegation that the officer knew the affidavit lacked probable cause. *Id.* at *2. The officer, on the other hand, "offered affidavits from experienced police officers who maintain that a reasonable officer in his position would have found probable cause to arrest . . . ." *Id.* The court affirmed the granting of summary judgment on the basis of qualified immunity. *Id.* at *2-*3.

In another case, a plaintiff again sued police officers who had instituted criminal proceedings against him. *See Beard v. City of Northglenn*, 24 F.3d 110 (10th Cir. 1994). The plaintiff offered expert testimony that one of the officers had no basis for concluding that certain signatures were made by the plaintiff. The court held that this testimony did not support an inference that the officer acted recklessly because it did not "illuminate [the officer's] intentions while he was conducting his investigation" and provided "no grounds for believing that the mistake was the result of any invidious animus." *Id.* at 116. To the extent that the testimony indicated that the officer would not have made the mistake if he had conducted a more thorough investigation, the court held that the testimony was immaterial: "The failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing

6

or reckless disregard for the truth." *Id.* (citations and internal quotation marks omitted).

In a still later case involving a claim of excessive force, the plaintiff relied on an expert's affidavit to oppose the defendants' assertion of qualified immunity. *See Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001). The court held that the affidavit did not raise a genuine issue of material fact for the following reasons:

> [I]t simply contains the ultimate conclusion that the officers' use of force did not conform with accepted police guidelines and practices and was, therefore, excessive. We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983. Moreover, the reasonableness standard does not require that officers use "alternative 'less intrusive' means." If we were to . . . consider the expert's assertions . . . we would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene.
> Furthermore, the expert based his opinion generally on his knowledge of various documents, rather than presenting specific facts, and did not indicate whether his conclusion rests on a finding that the officers acted recklessly, as opposed to negligently. We therefore follow the well-settled principle that an expert opinion may not be sufficient to overcome summary judgment if "it is conclusory and thus fails to raise a genuine issue of material fact."

*Id.* at 1133 (citations omitted).[2]

---

[2] In an earlier excessive force case not involving qualified immunity, the Tenth Circuit approved the testimony of an expert in police training, tactics, and the use of deadly force because "[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *Zuchel v. City and County of Denver*, 997 F.2d 730, 742 (10th Cir. 1993). *But see Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005) (holding that "the violation of police regulations is insufficient to ground a § 1983 action for excessive force," and evidence that "an arrest violated police department procedures . . . is irrelevant . . . to determining if Plaintiffs' arrest violated the reasonableness requirement of the Fourth Amendment"). Judge Seymour, who authored *Zuchel*, filed a dissent in *Medina*. After quoting a substantial portion of the expert's affidavit, Judge Seymour concluded, "Rather than being conclusory, this affidavit constitutes probative evidence suggesting that contemporary police procedures were violated by defendant officers in this case, and that, at a minimum, the completion of scheduled discovery was necessary to resolve fact issues . . . ." *Medina*, 252 F.3d at 1138-40; *see also Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990) (holding that expert in use of force could testify about prevailing standards in the field of law enforcement, but not about whether the officers' actions were reasonable). *But see Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding that trial court committed reversible error by allowing an expert in police practices and procedures to testify that officers' actions were consistent with nationally accepted standards).

In none of these four cases did the Tenth Circuit articulate a special rule regarding the admissibility or relevance of expert testimony on the issue of qualified immunity. *Medina* and *Beard* did not hold that expert testimony is always inadmissible or irrelevant; they simply held that the particular expert testimony offered in those cases was not relevant or did not comply with general requirements for the admissibility of expert testimony. Since the court relied on expert testimony in *Bruning*, as well as in *White*, I conclude that expert testimony can be admissible and relevant regarding qualified immunity in some circumstances.

## APPLICATION OF THE LAW TO THE FACTS OF THIS CASE

Not surprisingly, the Officers argue that *Medina* and *Beard* control here, while Lucero argues that *Bruning* and *White* control. Citing language in the complaint and the IPTR, the Officers state in their motion to exclude that Lucero only intends to offer expert testimony regarding police practices. They argue that such practices are irrelevant, as the Tenth Circuit indicated in *Medina.*

In his response, Lucero acknowledges that he cannot defeat qualified immunity by showing that the Officers violated police practices. He points out that as in *Bruning* and *White*, this case involves misidentification, probable cause, and the Officers' states of mind.

In their reply, the Officers essentially seek to limit *Bruning* to its facts. They state, "[E]xpert testimony from which a court may infer a knowing or reckless intent is narrowly confined to the specific circumstances of a probable cause affidavit in support of an arrest warrant." [Doc. 23 at 6] They argue that Lucero's complaint is not specific enough to support the discovery and testimony that he seeks because it only alleges that the Officers violated police practices, does not put the Officers' states of mind in issue, and does not assert a lack of probable cause supporting an arrest affidavit. They complain that Lucero "is seeking to state a malicious prosecution or false arrest cause

8

of action through expert testimony without first pleading these claims." *Id.* at 2.

I agree with the Officers that before Lucero clarified his intentions in his response, they could have reasonably believed that he only wanted to offer expert testimony regarding police procedures. The IPTR states without elaboration that Lucero wanted to have two experts in police procedure "testify as to practices, with respect to the investigation" that resulted in his arrest and prosecution "and as to practices, procedures, training, and supervision in the New Mexico State Police and in law enforcement, generally." [Doc. 17 at 22]  Moreover, there is ample language in the complaint from which the Officers could have inferred that Lucero based his claims, at least in part, on the Officers' alleged violation of police practices.  Throughout the complaint, Lucero states that the investigation was "contrary to clearly established law enforcement methods, standards, and practices."

But I cannot agree that Lucero's complaint only alleges a violation of police practices or that the complaint makes no allegation regarding the Officers' states of mind.  The complaint asserts that Salbidrez and Valdez violated Lucero's rights under the Fourth, Fifth, and Fourteenth Amendments and specifically alleges that the Officers actions went "beyond mere negligence" and constituted "deliberate, knowing, or callous indifference to [Lucero's] clearly established Constitutional rights." [Doc. 1 at 3]  The complaint also alleges that the officers knew or should have known of exculpatory evidence, "but willfully, wantonly, or in callous indifference to [Lucero's] clearly established Constitutional rights, . . . maintained throughout trial that [he] had engaged in drug trafficking." *Id.* at 7.[3]

---

[3] Additionally, the IPTR states, "Plaintiff makes claims, under 42 U.S.C. § 1983, for false arrest, false imprisonment, malicious prosecution, and unlawful detention . . . ." [Doc. 17 at 2]  The Officers did not except to this statement.  Although I do not construe this as an admission that Lucero has properly stated a claim, it does indicate the Officers understood that Lucero was attempting to bring a § 1983 claim in the nature of malicious prosecution or false arrest.

9

The Tenth Circuit no longer imposes a heightened pleading requirement in qualified immunity cases. *See Currier v. Doran*, 242 F.3d 905, 911-16 (10th Cir. 2001). Nor does it require a plaintiff to label a § 1983 claim as one for malicious prosecution. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1286 n.3 (10th Cir. 2004). The Officers have not filed a motion for a more definite statement. *See Crawford-El*, 523 U.S. at 598 (indicating that a court should grant a motion for a more definite statement, requiring the plaintiff to make specific, nonconclusory allegations that establish improper motive). They also have not sought a prediscovery ruling as to their qualified immunity defense or as to whether the complaint properly states a § 1983 claim.[4] Therefore, I reject the Officers' suggestion that the allegations in Lucero's complaint are insufficient to support discovery regarding their states of mind.

I also reject the Officers' suggestion that *Bruning* only allows expert testimony about a defendant's state of mind in preparing an arrest affidavit. The Tenth Circuit recognizes a § 1983 action in the nature of malicious prosecution against a person who was instrumental in the plaintiff's arrest or prosecution, regardless of whether that person prepared the arrest affidavit. *See Pierce*, 359 F.3d at 1291-93; *see also Becker v. Kroll*, 340 F. Supp. 2d 1230, 1240 (D. Utah 2004) ("[I]f defendants . . . were instrumental in plaintiff's continued prosecution, while knowing there was no probable cause for the charges, they cannot escape liability simply because they were not the ones who filed the criminal action."). The Officers acknowledge that when the plaintiff "has produced evidence in support of his <u>allegations</u> that false statements or omissions have affected the existence

---

[4] They do argue in their reply that the complaint is subject to dismissal for failure to state a claim. It is for the presiding judge, upon proper motion, to decide whether the complaint should be dismissed for failure to state a claim. Nothing in this order is intended to state an opinion as to whether the complaint properly alleges a § 1983 claim. My observations relate only to whether the allegations in the complaint support the discovery and testimony that Lucero seeks.

of probable cause, the knowing or reckless nature of the conduct may be inferred from expert testimony that the inclusion of false statements or material omissions 'constitute[] a deviation from what an objective and reasonable police officer would consider appropriate in like circumstances.'" [Doc. 23 at 6-7 (quoting *Bruning*, 949 F.2d at 360)]  There is nothing in *Bruning* to indicate that the relevance of expert testimony regarding an official's state of mind is limited to situations involving an arrest affidavit.  *Cf. Pierce*, 359 F.3d at 1299 ("There is no moral, constitutional, common law, or common sense difference between providing phony evidence in support of an arrest and providing phony evidence in support of continued confinement and prosecution.").

## CONCLUSION

As both parties acknowledge, the mere violation of police practices would not cause the Officers to lose their qualified immunity.  *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Medina*, 252 F.3d at 1133.  I will allow the parties to conduct expert discovery to establish or refute that the Officers' conduct amounted to a "deviation from what an objective and reasonable police officer would consider appropriate in like circumstances."  *Bruning*, 949 F.2d at 360.  Because no proffer has been made regarding what any expert will testify, I cannot determine at this point whether the actual expert testimony offered by either party will be relevant on the qualified immunity issue.  This determination is best left to the presiding judge when making his ruling on qualified immunity.

IT IS THEREFORE ORDERED that the Motion to Exclude Expert Discovery and Expert Testimony on Issue of Qualified Immunity [Doc. 18] is DENIED.

IT IS SO ORDERED.

*[signature: William P. Lynch]*

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.