**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ADRIAN E. LUCERO,

       Plaintiff,

v.                                                                                            CIV. NO. 05-0601 JP/WPL

CHRIS VALDEZ AND MARIO SALBIDREZ,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before me to determine the proper scope of discovery regarding qualified immunity.

**BACKGROUND**

After being acquitted of trafficking in a controlled substance, Adrian E. Lucero commenced this civil-rights suit against two New Mexico State Police Officers who participated in the investigation and prosecution of him for the crime. In his amended complaint, Lucero alleges that the Officers—Chris Valdez and Mario Salbidrez—conducted a "plainly incompetent" investigation that was "calculated to fail to uncover easily obtainable exculpatory evidence" and that they fabricated, withheld, and misrepresented evidence. (Doc. 48 at 1-3, 16.)

Lucero further alleges:

> At the time of Defendants' false identification of Plaintiff as a felony drug trafficker . . . , there was public pressure to show that narcotics investigations in Rio Arriba County were having an impact on drug trafficking. Defendants made repeated false identifications of innocent citizens as drug traffickers, not based on probable cause, but, instead, to show that narcotics investigation was showing results and quell public dissatisfaction about the lack of results seen previously. (*Id.* at 11-12.)

In support of these allegations, the amended complaint identifies five other people who were indicted

in the same time frame as Lucero.  (*Id.* at 12-14.)  One or both of the Officers were involved in these other five cases.  (*Id.*)  In four of the cases, the district attorney filed a *nolle prosequi* or moved to dismiss the indictment.  (*Id.* at 12-13.)  The dismissal or *nolle prosequi* in two of the cases followed a motion by the public defender, alleging "'outrageous police conduct.'"  (*Id.*)  In the fifth case, the trial judge dismissed one count and the defendant was acquitted on the remaining counts of the indictment.  (*Id.* at 13-14.)[1]

## **THE DISCOVERY DISPUTE**

The parties' revised  provisional discovery plan (PDP) proposes an initial discovery period limited to qualified immunity issues.  (Doc. 56 at 1.)  The parties agree that, during this initial period of discovery, depositions will be limited to a maximum of five per side.  (*Id.* at 2.)  The parties cannot agree, however, regarding the proper scope of discovery.  As stated in the PDP:

> Defendants request that depositions during the qualified immunity discovery period be limited to parties and experts only.  Plaintiff requests that depositions not be limited to parties and experts and that depositions duces tecum which are solely for production or authentication of documents not be included in the 5 deposition maximum . . . .  (*Id.*)

I directed the parties to file briefs on this dispute.  (Doc. 59.)  In his opening brief, Lucero explains that because his amended complaint contains allegations regarding the Officers' intent and states of mind, he wishes to

> engage in depositions to authenticate Plaintiff's criminal trial transcript and the Grand Jury testimony transcript, and  depositions  to  produce  and  authenticate  other

---

[1] In his opening brief regarding this discovery dispute, Lucero claims that further investigation has revealed that Salbidrez was the complaining witness in thirty-nine cases on the day before and the day of Lucero's indictment, and that none of those cases "resulted in post-adjudication jail time for the accused person."  (Doc. 61 at 2-3.)  Similarly, there were approximately fifty indictments resulting from narcotics investigations directed by Valdez.  None of those cases "resulted in post-adjudication jail time for the accused person."  (*Id.* at 3.)

documents, and recordings, exhibits, and other items relevant to Plaintiff's criminal prosecution and other prosecutions in which Defendants were involved. That documentation may be in the possession of the New Mexico State Police, the First Judicial District Attorney, the New Mexico Public Defender, the United States Attorney, the Federal Drug Enforcement Administration, and other agencies. (Doc. 61 at 1-2.)

Lucero also claims that his indictment resulted from the "High River Operation," a joint effort by federal, state, and local law enforcement to curb narcotics trafficking. He seeks discovery of the rules and guidelines of the High River Operation pertaining to identification of suspects. (*Id.* at 3-4.)[2]

The Officers, on the other hand, "request that discovery be directed only to the conduct alleged to have occurred in this case and that expert testimony also be limited to opinions based on the Defendants' conduct with regard to Plaintiff." (Doc. 60 at 4.)

## DISCUSSION

In analyzing the parties' arguments, I am mindful that defendants who are entitled to qualified immunity should not have to endure broad-reaching discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Moreover, it is Lucero's burden to show how any proposed discovery is relevant to qualified immunity. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1387 (10th Cir. 1994).

The parties anticipate that the Officers will file a motion for summary judgment on the basis of qualified immunity. Because their states of mind constitute an element of Lucero's claim, the Officers will have to make a prima facie showing that their conduct was objectively reasonable. *See Bruning v. Pixler*, 949 F.2d 352, 356-57 (10th Cir. 1991). If they satisfy this prima facie burden, the burden will shift to Lucero to produce specific evidence that they had culpable states of mind. *See*

---

[2] Lucero has submitted an excerpt of Valdez's testimony at Lucero's trial. The testimony indicates that Valdez did not follow the procedures followed by DEA agents involved in the High River Operation, such as using a "wire" during drug transactions. (Doc. 61 Ex. 2.)

*id.* at 357. Lucero will not be able to defeat the summary judgment motion unless he produces this evidence. *See id.* Therefore, if Lucero can show that his proposed discovery is relevant to the Officers' states of mind, he should be allowed to pursue the discovery. Prohibiting such discovery would preclude Lucero from satisfying his summary judgment burden.

Lucero argues that discovery regarding other High River cases is relevant to the Officers' states of mind. He claims that other High River investigations and prosecutions were, like his, faulty and ultimately unsuccessful. At least some of these other cases were also, like his, based on misidentification of the perpetrator by a law enforcement officer. Thus, Lucero argues that these other cases are relevant to the Officers' states of mind under the "doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all." 2 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 302, at 241 (Chadbourn rev. 1979) (cited in *United States v. Cherry*, 433 F.3d 698, 702 (10th Cir. 2005)). Lucero additionally relies on Federal Rule of Evidence 404(b), which provides that evidence of other acts may be admissible to prove motive, intent, plan, or absence of mistake or accident.

The Officers rely on several, mostly unpublished, cases to establish that Lucero is not entitled to pursue the discovery he seeks. In *Rome v. Romero*, a published case, a *pro se* plaintiff asserted claims for false arrest, excessive force, and assault and battery. 225 F.R.D. 640, 642 (D. Colo. 2004). The District Court of Colorado refused to allow discovery of the defendant officers' personnel files, complaints against the officers, and the training received by the officers, because such discovery would not address the conduct underlying the plaintiff's claims. *Id.* at 644-45. The opinion does not provide any factual background for the plaintiff's claims or any description of the plaintiff's

allegations. There is no indication that the officers were involved in other similar cases or that the plaintiff's discovery requests amounted to anything more than a "fishing expedition." Here, in contrast, the amended complaint specifically alleges that Lucero's misidentification occurred within the context of a larger operation in which others were also misidentified as drug traffickers.

The Officers cite *Pett v. Dudzinski*, 183 F. App'x 740 (10th Cir. 2006), for the proposition that the State's inability to meet the burden for a criminal charge is insufficient to defeat qualified immunity. The plaintiffs in that case alleged that the defendants caused them to be charged and arrested on the basis of false information in an affidavit establishing probable cause for their arrest. 183 F. App'x at 741. In its unpublished decision, the Tenth Circuit chastised the plaintiffs for focusing on whether the State could prove the charges against them, instead of focusing on whether the defendants knew the challenged information was false or had a reckless disregard for its truthfulness. *Id.* at 742. Here, Lucero is not relying merely on his acquittal. He is attempting to establish the Officers' bad intent or recklessness by obtaining evidence that several other prosecutions arising out of the same operation and involving the same Officers went awry for similar reasons as his prosecution went awry.

The Officers cite *Scully v. City of Watertown*, No. 7:03 CV 846, 2005 WL 1244838 (N.D.N.Y. May 25, 2005), for the proposition that evidence of other conduct by officers should not be considered as the predicate for discrete false arrest claims. A close reading of the unpublished decision indicates that the court's ruling resulted from the plaintiff's failure to specify which incidents formed the basis for his false arrest claim. *See* 2005 WL 1244838, at *7. Lucero's amended complaint does not suffer from this lack of clarity.

Finally, the Officers cite *Tubar v. Clift*, No. C05-1154JCC, 2006 WL 521683 (W.D. Wash.

5

March 2, 2006). In that case, the plaintiff brought a civil rights suit against a police officer who shot him. Although the officer had an "apparent history of shootings," the district court ruled that discovery propounded to the officer had to be limited to requests that "specifically relate[d] to the parties' factual disputes concerning the shooting incident at issue in the present case." 2006 WL at *2, *4. As the Officers note, *Tubar* was an excessive force case. Because excessive force claims are judged by a purely objective standard, evidence of an officer's state of mind is irrelevant. *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tanberg v. Sholtis*, 401 F.3d 1151, 1167-68 (10th Cir. 2005). In this case, however, the Officers' states of mind constitute an element of Lucero's claim.

## CONCLUSION

I agree with Lucero that discovery regarding the other High River cases is relevant to the Officers' states of mind. *See Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990) (evidence of officer's subsequent similar misconduct was admissible to show intent in civil rights suit against officer). Because the discovery is relevant to the Officers' states of mind, it is relevant to the Officers' qualified immunity defense.

I also agree with Lucero that the rules and procedures governing identification of suspects in the High River Operation are relevant to the Officers' states of mind. The mere violation of these rules and procedures will not establish a constitutional violation. *See Tanberg*, 401 F.3d at 1163-64. But failure to follow the rules and procedures may demonstrate intent or recklessness regarding identification of suspects, considering Lucero's allegation that the investigation was calculated to fail to uncover easily obtainable exculpatory evidence. *Cf. Bruning*, 949 F.2d at 360 (concluding that a factfinder could infer that officers acted with a reckless disregard for the truth by including certain

information in an affidavit, where an expert testified that the officers deviated "from what an objective and reasonable police officer would consider appropriate in like circumstances").

IT IS THEREFORE ORDERED THAT:

1) depositions during the qualified immunity discovery period are not limited to parties and experts only;

2) depositions duces tecum, which are solely for production or authentication of documents, are not included in the five-deposition maximum; and

3) expert testimony need not be limited to opinions based on the Officers' conduct with regard to Lucero.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

7