**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ADRIAN E. LUCERO,

       Plaintiff,

vs.                                   No. CV 05-601 JP/WPL

CHRIS VALDEZ and MARIO SALBIDREZ,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

On April 27, 2007 Defendants filed a Motion for Summary Judgment on Qualified Immunity (Doc. No. 87).  On May 21, 2007 Plaintiff filed a Response (Doc. No. 89), and on June 18, 2007 Plaintiff filed a corrected Response (Doc. No. 97).  On July 3, 2007 Defendants filed their Reply (Doc. No. 99), along with a Motion to Strike Plaintiff's Exhibits (Doc. No. 100).[1]  With leave of the Court, Plaintiff filed a Sur-Reply to the Motion for Summary Judgment (Doc. No. 103) on July 12, 2007.  After carefully considering all the pleadings, the admissible evidence of record, the arguments of counsel, and the relevant law, the Court determines that the motion to strike should be granted in part and denied in part, and that the motion for summary judgment should be granted.

**Nature of the Case.**

Plaintiff Adrian E. Lucero brings this civil rights action under 42 U.S.C. § 1983.  He asserts two federal constitutional claims under the Fourth Amendment, one for violation of his right to be free from arrest without probable cause, and one for malicious prosecution.  He also

---

[1] Plaintiff filed a Response to the Motion to Strike (Doc. No. 104), and a "Part 2" to this Response (Doc. No. 105); Defendants filed their Reply to the Motion to Strike (Doc. No. 106).

asserts a third federal constitutional claim under the Fourteenth Amendment for a due process violation.  The claims stem from the arrest and prosecution of Plaintiff on drug charges, which resulted in acquittal by a jury and a rare apology by the trial judge.  Defendants contend they are entitled to qualified immunity on all claims because Plaintiff cannot meet his burden of demonstrating either that Defendants violated a constitutional right, or that reasonable police officers would have known from pre-existing case law that the conduct actually engaged in by Defendants would violate Plaintiff's constitutional right to be free from arrest without probable cause.

### Summary Judgment Standards.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and  the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" where the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv., 165 F.3d 1321, 1326 (10th Cir. 1999).  Only then does

the burden shift to the non-movant to come forward with evidence showing that there is a

genuine issue of material fact.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891

(10th Cir. 1991).  The non-moving party may not avoid summary judgment by resting upon the

mere allegations or denials of the party's pleadings.  Bacchus, 939 F.2d at 891.  To withstand a

motion for summary judgment, the non-movant must make specific reference to admissible

evidence in the record that creates a genuine issue of material fact.  See Gross v. Burggraf

Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995).

**Qualified Immunity Standards.**

Qualified immunity protects government officials performing discretionary functions,

sued in their individual capacities, from participation in § 1983 lawsuits for civil damages

"insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982);

Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004); Tonkovich v. Kansas Bd. of Regents, 159

F.3d 504, 516 (10th Cri. 1998).  Once a defendant invokes qualified immunity, the plaintiff is

faced with a heavy two-part burden:

> [T]he plaintiff must show (1) that the defendant's conduct violated
> a constitutional or statutory right, and (2) that the law governing
> the conduct was clearly established at the time of the alleged
> violation. . . .  For a right to be clearly established, '[t]he contours
> of the right must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.'
> Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Eaton, 379 F.3d at 954 (internal citations omitted).  If the plaintiff is unable to meet either part of

his two-part burden, summary judgment is proper.  Albright v. Rodriguez, 51 F.3d 1531, 1535

(10th Cir. 1995).

3

When the defense of qualified immunity is raised in a summary judgment motion, the court must proceed first by determining whether a plaintiff has demonstrated the violation of a constitutional or statutory right.  Eaton, 379 F.3d at 954.  If the plaintiff fails to meet the first part of the test, the court need not go on to the "clearly-established" prong of the test.  Id.

**Factual Background.**

In accordance with summary judgment standards, and with the Court's ruling on the Defendants' Motion to Strike Exhibits (which is discussed later in this opinion), the following facts are either undisputed or viewed in a light most favorable to Plaintiff.  In October 2001 Plaintiff lived with his sister Roxanne Lucero in Albuquerque.  He had recently returned to New Mexico after attending a motorcycle maintenance program in Arizona.  During this time Plaintiff occasionally stayed with and worked for his aunt Lenora J. Crow in Edgewood, New Mexico.  Pl. Ex. A at 1-5 (transcript of Crow's and R. Lucero's testimony in Plaintiff's criminal trial).  Also during this time, Plaintiff and his sister occasionally visited their mother, Theresa Lucero, in Española, New Mexico.  These visits usually occurred on weekends because their mother worked during the week.  Pl. Ex. A at 5-8 (testimony of R. Lucero and T. Lucero).

On October 10, 2001 (a Wednesday) Defendant Sergeant Chris Valdez, Defendant Agent Mario Salbidrez, and Agent Orlando Cordova conducted an undercover drug buy at the Bonecutter Trailer Park in Española, New Mexico.  Prior to October 10, 2001, Sergeant Chris Valdez received information from a confidential informant ("CI") that someone was selling cocaine in the Bonecutter Trailer Park.  Sergeant Valdez briefed Agent Mario Salbidrez on the information he had received and arranged a meeting between Agent Salbidrez and the CI on October 10, 2001.  At this meeting on October 10, 2001, the CI informed Agent Salbidrez that

4

Salbidrez would be purchasing narcotics from a person named "Adrian."  The CI accompanied

Agent Salbidrez to the trailer where "Adrian" was waiting.  Agent Salbidrez pulled up to the

trailer identified by the CI and honked his horn.  The person whom the CI identified as "Adrian"

exited the trailer, the CI got out of the car, and "Adrian" got into the car with Agent Salbidrez.

　　　While sitting in the car, Agent Salbidrez purchased a powdery substance from "Adrian"

at the already-negotiated price of $350.00.  The substance was later identified as 13.2 grams of

cocaine.  During the drug buy, Agent Salbidrez informed "Adrian" that he would like to make

future purchases from him and requested contact information.  "Adrian" gave Agent Salbidrez a

piece of paper with the name "Adrian" and a cellular phone number.

　　　Defendants have given conflicting accounts of how they focused on the last name of

"Lucero."  Defendants assert that during the drug buy Agent Salbidrez asked "Adrian" for his

last name and Adrian provided the last name of "Lucero."  Def. UMF 7; Def. Ex. 2 (Salbidrez

Aff.) ¶ 14 at 4.  Salbidrez testified before the grand jury that the CI had identified the seller as

Adrian Lucero.  Pl. Ex. G (Salbidrez grand jury testimony) at 2; Pl. Ex. B Part 2 (Salbidrez

testimony in Plaintiff's criminal trial) at 1-2.  In his police report of the incident, Defendant

Valdez wrote that Salbidrez had told him that the seller had identified himself as "Adrian E.

Lucero."  Pl. Ex. E (interview of Valdez by Plaintiff's criminal defense attorney Paul Branch).

However Salbidrez told an investigator for Plaintiff's criminal defense attorney that although

Adrian gave Salbidrez the last name Lucero, he did not give his middle initial.  Pl. Ex. H at 4.

　　　Throughout the undercover purchase, to ensure the safety of Agent Salbidrez, Sergeant

Valdez and Agent Cordova were conducting surveillance from a Walgreen's parking lot at a

distance of approximately 125 yards, but they could not observe the transaction take place or

identify the seller from their vantage point.  Upon completing the undercover purchase, Agent Salbidrez returned to the New Mexico State Police Office in Española, met with Sergeant Valdez, briefed Valdez on the undercover purchase, and provided Valdez with the information he had obtained from and observed about the seller, including the name "Adrian," the phone number given to him by the seller, and a physical description and approximate age of the seller.

On the same day, based on the information Agent Salbidrez provided, Sergeant Valdez utilized an electronic database, Criminal Justice Information System ("CJIS"), to conduct a search.  Sergeant Valdez narrowed the search by looking for people with the name "Adrian Lucero" that fit the approximate age range Agent Salbidrez had described.  Sergeant Valdez focused his CJIS search to an Adrian E. Lucero who had an address in Española and who was within the age range (DOB 5/7/82) that Agent Salbidrez had described.  Sergeant Valdez retrieved information from CJIS regarding prior arrests for Adrian E. Lucero, including a July 4, 2000 arrest for possession of a controlled substance (methamphetamine).  Sergeant Valdez also obtained a driver's license number and an address for Adrian E. Lucero (a P.O. box in Española, New Mexico) from CJIS.  Using Adrian E. Lucero's driver's license number obtained from CJIS, also on October 10, 2001 Sergeant Valdez requested a New Mexico Driver's License History Inquiry from a New Mexico State Police dispatcher.  From the report provided, Sergeant Valdez was able to verify the information acquired in CJIS including Adrian E. Lucero's name, date of birth, social security number, driver's license number and address in Española.

Sergeant Valdez then contacted the Inspector General's Office for the Motor Vehicle Department and requested a New Mexico Department of Motor Vehicle ("DMV") driver's license photo of Adrian E. Lucero, providing the Inspector General's Office with the driver's

license number he had obtained.  On October 11, 2001, the photograph obtained from DMV was presented to Agent Salbidrez, who misidentified Adrian E. Lucero as the person who sold Agent Salbidrez cocaine on October 10, 2001.[2]  On October 11, 2001, the same photograph was presented to the CI, who identified Adrian E. Lucero as the person from whom Agent Salbidrez had purchased cocaine on October 10, 2001.  Def. UMF 16.

The information Sergeant Valdez learned through CJIS and the New Mexico Driver's License History Inquiry, including the fact that Adrian E. Lucero had a criminal history, was later confirmed by a National Crime Information Center ("NCIC") inquiry that Valdez ran on October 19, 2001.  Both officers believed that the information they had obtained, including Plaintiff's Española address, his prior arrest for a drug-related crime, the fact that Plaintiff was the same approximate age as the person from whom Agent Salbidrez had purchased cocaine on October 10, 2001, and that the photograph of Plaintiff was visually identified by Agent Salbidrez as the suspect based on Agent Salbidrez' interaction with the suspect during a hand-to-hand undercover buy, in addition to the confidential informant's visual identification, was sufficient to establish probable case for arrest.[3]

---

[2]  This fact comes from Defendants' UMF 15, which in its original form read "identified Adrian E. Lucero as the person who sold Agent Salbidrez cocaine on October 10, 2001."  In his Surreply, Plaintiff contends there is a dispute about this phrase.  Plaintiff does not dispute that Salbidrez identified Plaintiff as the seller; instead he maintains that this was a deliberate or reckless misidentification.  Since the issue of whether the misidentification was deliberate, reckless, or merely mistaken is central to the case, the Court omits the state of mind element in this fact.

[3]  This statement is in Defendants' UMF 18, with an additional factor allegedly supporting probable cause, i.e., "the fact that the suspect had . . . provided the name Adrian Lucero."  Def. Memo in Supp. at 6.  The Court has omitted that portion of UMF 18 from the Factual Background because Plaintiff disputed that portion.  Plaintiff did not object to the rest of Defendants' UMF 18.

In an effort to make further cocaine purchases and potentially identify other drug traffickers, Agent Salbidrez called the phone number Adrian had provided, but Salbidrez was unable to make any further contact with Adrian. Agent Salbidrez also drove to the trailer park where he had purchased drugs from Adrian.  Children at the trailer park told Agent Salbidrez that Adrian was gone, possibly to Chimayo, New Mexico.  Beyond Agent Salbidrez' attempts to locate or contact the suspect to make additional drug buys, neither Sergeant Valdez nor Agent Salbidrez conducted any further investigation; they did not believe that Agent Salbidrez' inability to track down and make additional drug purchases from Adrian invalidated the probable cause already established.

Defendants did not make any further effort to correctly identify the person who sold cocaine to Salbidrez on October 10, 2001.  Defendants did not check the phone records of the number given to Salbidrez by the suspect.  Those phone records would have shown that the phone number was registered to Adrian Dominguez, that Adrian Dominguez was the same age as Plaintiff and listed a Chimayo address, and that the phone usage showed a very high volume of calls to and from the number during the period surrounding October 10, 2001.

On April 19, 2002, Agent Salbidrez testified at a grand jury proceeding targeting Plaintiff regarding the October 10, 2001 undercover purchase.  The grand jury indicted Plaintiff for the felony of trafficking in a controlled substance.  An arrest warrant was issued and Plaintiff was arrested on or about June 1, 2002.  Plaintiff was incarcerated for 24 days, after which he was on house arrest until the time of trial.  Both Sergeant Valdez and Agent Salbidrez testified at Plaintiff's February 6, 2003 criminal trial and Agent Salbidrez, again, as he had during the investigation, identified Plaintiff as the person who sold him cocaine on October 10, 2001.  The jury found Plaintiff not guilty, and the trial judge apologized to Plaintiff after the acquittal.

At a hearing on a motion to suppress in 2007, a judge in an unrelated case, *State v. Patrick Quintana*, questioned the credibility of Agent Salbidrez after Salbidrez testified that he had observed an incident that he had failed to note in his written report.

Defense experts, Bill Rehm and Samuel Candelaria, concluded that the facts and circumstances known to Defendants were sufficient to allow a reasonable police officer to conclude that probable cause existed to make an arrest.  Plaintiff's experts, Darrel G. Hart and Lou Reiter opined drug sellers often falsely identify themselves.

**Discussion.**

**I.  Preliminary Matter - Defendants' Motion to Strike Plaintiff's Exhibits.**  In their Motion to Strike, Defendants request that all of Plaintiff's exhibits (A - O) filed with his two Responses to the summary judgment motion be stricken.

*Grand Jury and Trial Testimony and Transcripts of Interviews.*  Plaintiff's Exhibit G consists of an excerpt of the testimony of Agent Salbidrez during the grand jury proceedings in Plaintiff's case.  Plaintiff's Exhibits A, C, D, I, O, and a portion of B consist of excerpts of testimony of witnesses who testified at Plaintiff's criminal trial.  Exhibit A contains testimony of Plaintiff's aunt, Lenora Crow, Plaintiff's sister, Roxanne Lucero, and Plaintiff's mother, Theresa Lucero.  These witnesses testified to the effect that Plaintiff was living with his sister in Albuquerque, New Mexico on October 10, 2001 and working for his aunt in Edgewood, New Mexico around that time, and that Plaintiff and his sister would visit their mother in Española on weekends because the mother worked during the week.  Exhibit C contains testimony of Tomas Alarid who, as investigator for the public defender representing Plaintiff in the criminal proceeding, located the phone records for the cellular phone number given to Salbidrez by the

seller, as well as a yearbook photograph of Adrian Dominguez, to whom to phone was

registered.  Exhibit I contains the testimony of an employee of the Alltel phone company, who

confirmed that the phone number was registered to Adrian W. Dominguez who had an address in

Chimayo and a date of birth within a few months of Plaintiff's.  Exhibits B, D, and O contain

trial testimony by Agent Salbidrez and Sergeant Valdez.

    Plaintiff's Exhibits E, F, H, M, and a portion of B contain transcriptions of recorded

interviews of Defendants Salbidrez and Valdez, and of another officer Orlando Cordova,

conducted by members of Plaintiff's criminal defense team.

    Defendants move to strike these exhibits as unauthenticated,[4] and as hearsay.  Plaintiff

belatedly authenticated these exhibits in his "Response to Motion to Strike, Part 2" (Doc. No.

105).  Affidavits made on personal knowledge are hearsay, yet they are admissible in summary

judgment proceedings.  The trial testimony is admissible, just as an affidavit by these witnesses

would be admissible, in a summary judgment proceeding.  The testimony of these witnesses does

not contain hearsay; rather the testimony contains information within the knowledge of those

testifying.  "[T]ranscripts are not 'hearsay' merely because they consist of statements made by a

witness in a prior proceeding, any more than an affidavit or a deposition offered in support of a

motion for summary judgment is inherently hearsay."  Ricupero v. Wuliger, Fadel & Beyer,

1994 WL 483871 *4 (N.D. Ohio 1994).  In addition, the transcribed interview and testimony of

Agent Salbidrez in Exhibits B, G, H, M, and O are not offered to prove the truth of the matters

asserted; instead, they are offered to show that Salbidrez gave different versions of how he came

---

    [4] "[A]n inquiry into authenticity concerns the genuineness of an item of evidence, not its
admissibility."  Orr v. Bank of America, NT & SA, 285 F.3d 764, 776 (9th Cir. 2002) (holding it was
manifest error in summary judgment proceeding to exclude unauthenticated exhibits offered by one party
where same exhibits had been authenticated by opposing party).

up with the last name Lucero during his investigation.  Exhibits B, D, E, G, H, M and O are also
not hearsay because the documents constitute statements by a party (Salbidrez and/or Valdez)
offered against the party under Federal Rule of Evidence 801(d)(2).  The Valdez interview
(Exhibit E) shows that Valdez did not follow up on the cellular phone records to find Adrian
Dominguez.  Exhibit M shows that when Salbidrez went back to the trailer park to look for
Adrian, some neighborhood children told him Adrian was in Chimayo.

     *Trial Judge's Remarks after Plaintiff Acquitted.*  Plaintiff's Exhibit N is an excerpt from
the transcript of Plaintiff's criminal trial.  It is not testimony of a witness, but rather the remarks
of the trial judge after the jury acquitted Plaintiff.  Defendants contend that this exhibit
constitutes unauthenticated hearsay.  As with the previously discussed exhibits, this exhibit was
originally presented without being authenticated, but Plaintiff subsequently authenticated this
exhibit, albeit belatedly.  These remarks are not hearsay insofar as they are not offered to prove
the truth of the matters asserted, but rather to show that the judge apologized to Plaintiff after the
jury found him not guilty.[5]

     Defendants also argue that these exhibits are irrelevant.  These exhibits are of limited
relevance, as further discussed in the rest of this Memorandum Opinion, but they will not be
stricken on that ground.  Accordingly, Defendants' Motion to Strike will be denied as to
Plaintiff's Exhibits A, B, C, D, E, F, G, H, I, M, N, and O.

     *Transcript of Hearing in 2007 in Unrelated Case.*  Plaintiff's Exhibit J is a partial

---

    [5]  The judge stated:  "Mr. Lucero, today is one of those days where I can tell you I am very proud
and disappointed to be a judge.  I'm proud because our system of justice, I believe, worked.  And I
believe and am confident in the verdict that's been delivered by the jury.  I'm also disappointed and I
have to apologize to you . . . Two months in jail.  I'm sorry, Adrian.  I know that doesn't mean a lot.  And
it doesn't make up for your two months and all you've been through for the past nine."  Pl. Ex. N.

transcript of a hearing on a motion to suppress evidence in an unrelated case, *State of New Mexico vs. Patrick Quintana*.  At the March 20, 2007 hearing, the trial judge, Hon. Michael E. Vigil, questioned the witness Mario Salbidrez, about his testimony.  Salbidrez had prepared a written report in which he indicated that another officer, Sergeant Altonji, had observed a drug sale that provided probable cause for a stop of the suspect.  At the hearing, Salbidrez apparently testified that he, too, had observed the sale.  The judge stated that he found it "hard to believe" that Salbidrez had observed the sale because Salbidrez had not written in his report that he observed it.  "I find your credibility is in real question here with me because I find that . . . if you can't answer the question, I find you unbelievable."  Pl. Ex. J at 3.  The judge then asked Salbidrez why he hadn't put his own observation in his report, and Salbidrez said he didn't know why he indicated in his report "only what Sergeant Altonji put."  Id.  The judge stated:  "this is not credible.  I hope you haven't perjured yourself, officer."  Salbidrez responded:  "No, Your Honor."  Id.  Judge Vigil granted the motion to suppress, finding the testimony of Salbidrez not credible and "very suspicious."  Id. at 4.

Defendants move to strike this exhibit as unauthenticated hearsay.  Although the Plaintiff initially submitted this excerpt without authenticating it, he has since done so.  Before a jury this trial transcript would be inadmissible hearsay, but in this summary judgment proceeding it is just as admissible as an affidavit by, or a deposition of Judge Vigil or of Salbidrez about what went on at the hearing.

Defendants also argue the exhibit is irrelevant.  However, this exhibit is probative of

Salbidrez' credibility. This evidence may be admissible under Rule 608,[6] either as an opinion under subsection (a) of the rule, or under subsection (b), in the form of cross-examination of Salbidrez about the specific incident. The 2007 incident involved in Exhibit J is rather remote in time from the events at issue in this case, which occurred in 2001-2002, but in attacking credibility, temporal proximity is not strictly required. *See* <u>Deary v. City of Gloucester</u>, 9 F.3d 191, 196 (1st Cir. 1993) (holding that admission under Rule 608(b) of evidence of incident involving dishonesty of police officer that occurred 10 years before trial was not abuse of discretion). Accordingly, Exhibit J will not be stricken.

*Other Acts Evidence.* Plaintiff's Amended Complaint contains allegations about five other cases that he claims can be considered as evidence of other wrongs or acts by Defendants. Am. Compl. ¶¶ 46-50. Plaintiff presents evidence of those five cases in Plaintiff's Exhibit K. Plaintiff apparently offers these exhibits under Rule 404(b) to show "absence of mistake." Pl. Resp. (Doc. No. 97) at 16. In Plaintiff's Exhibit L, Plaintiff also attempts to introduce evidence of 39 drug trafficking cases, indicted around the same time as Plaintiff's case was indicted, in which Salbidrez was a "complaining witness." Defendants move to strike these exhibits on three bases: that they are unauthenticated; that they are inadmissible hearsay; and that they are

---

[6] Federal Rule of Evidence 608 provides, in pertinent part:
(a) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, . . .
(b) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

inadmissible under Rule 404(b).

Plaintiff claims that his misidentification as the drug seller in this case occurred within the context of a larger operation in which others were also misidentified as drug traffickers. Plaintiff contends that his indictment and prosecution were part of the "High River Operation," a joint effort by federal, state, and local law enforcement to curb narcotics trafficking in northern New Mexico.  Plaintiff attempts to develop a theory that Defendants were motivated to deliberately or recklessly misidentify him and to perform a recklessly inadequate investigation in his case because they were under pressure to bring numerous cases to show they were making progress in addressing the drug problem in the area.  Noting that the Defendants asserted the defense of qualified immunity, and that the Plaintiff asserted claims in which the state of mind of the Defendants was at issue, the Magistrate Judge resolved a dispute about the scope of discovery.  He allowed Plaintiff to conduct limited discovery regarding Defendants' conduct in other High River cases as well as the rules and guidelines of the High River Operation pertaining to identification of suspects.[7]  While evidence of other acts or wrongs theoretically could be relevant and admissible in this case, the evidence presented by Plaintiff in Exhibits K and L does not meet these standards, and most of it is inadmissible for other reasons as well.

Federal Rule of Evidence 404(b) generally excludes evidence of other acts or wrongs for the purpose of proving a person acted similarly on other occasions, but the rule allows admission of evidence of other acts to prove such things as motive, intent, knowledge, and absence of mistake.  To be admissible, the evidence must be offered for a proper purpose, it must be

---

[7] The Magistrate Judge also allowed discovery of expert testimony, including expert opinions based on the officers' conduct with regard to Plaintiff.  *See* Mem. Op. & Order (Doc. No. 64), filed 10/30/06.

14

relevant, and the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice.  *See* <u>Tanberg v. Sholtis</u>, 401 F.3d 1151, 1167 (10th Cir. 2005); <u>United States v. Lazcano-Villalobos</u>, 175 F.3d 838, 845-46 (10th Cir. 1999).  Rule 404(b) evidence must bear some similarity to the facts in the case in which it is introduced.  *See* <u>Tanberg</u>, 401 F.3d at 1169 (affirming exclusion of evidence in excessive force suit of police officer's prior uses of force because other incidents not "sufficiently similar, either in terms of the factual circumstances [the officer] confronted or the techniques he employed").

(a) *Plaintiff's Exhibit K.*  This exhibit consists of 17 pages of documents related to five other cases -- Defendant Salbidrez was involved in the first four cases, and Defendant Valdez was involved in the second, third, and fifth cases.

(1)  *State v. Dion Moya.*  The grand jury indictment lists Mario Salbidrez as the only witness who testified about two drug trafficking crimes that occurred on November 8, 2001.  The district attorney later filed a "*Nolle Prosequi*" recalling the arrest warrant because there was a "misidentification of the defendant and his twin brother."  Although the Amended Complaint alleges that the brothers are fraternal twins and do not resemble each other, and that the defendant had no criminal record while the twin had a drug conviction, Am. Compl. ¶ 46 at 12, the evidence does not support these allegations.  The most the evidence shows is that Salbidrez may have misidentified the wrong twin brother.  Viewed objectively, a misidentification of a twin brother does not tend to prove the use of deliberate or reckless falsehoods by the police officer.  These documents are not sufficient to raise an inference that Salbidrez deliberately or recklessly misidentified Plaintiff in the present case.

*(2) State v. Ruth Chiarez.*  The grand jury indictment lists Mario Salbidrez as the only witness who testified about a drug trafficking crime that occurred on July 24, 2001; Salbidrez and Valdez are listed as may-call trial witnesses, among others, for the State.  In a pre-trial defense motion, Salbidrez is accused of engaging in outrageous police conduct by "entrapping" Chiarez through the use of a paid informant, who had a grudge against Chiarez, and who induced her to act based on appeals to her sympathy.  Plaintiff implies that the district attorney dismissed the indictment for that reason, but in fact, the district attorney requested dismissal on the basis of a violation of the six-month rule.  Def. Ex. 4 at 1-2 (attached to Def. Reply, Doc. No. 99).  Even if there were proof of wrongful conduct towards Chiarez, the purported evidence has nothing to do with misidentification, and thus is not similar to the conduct alleged in this case.

*(3) State v. Sammy Salazar.*  The grand jury indictment lists Mario Salbidrez as the only witness testifying about a drug trafficking crime that occurred on June 11, 2001; a trial witness list names Salbidrez and Valdez as may-call witnesses, among others.  A defense motion alleges that Salbidrez engaged in outrageous police conduct by "entrapping" Salazar by directly providing drugs to him and his friend on one occasion, and by buying drugs from and providing drugs to Salazar through an informant on another occasion.  The district attorney filed a *nolle prosequi* "due to insufficient evidence to proceed to trial."  Although the Amended Complaint alleges that in the Salazar case Salbidrez claimed to have identified the person charged with the aid of photographs, Am Compl. ¶ 48, there is no evidence to support this allegation, or to support a reasonable inference that Salbidrez or Valdez did anything wrong in the Salazar case.  These documents have no bearing on the issue of absence of mistake or any other issues in this case.

*(4) State v. Antonio Vasquez.*  The grand jury indictment lists Mario Salbidrez as the only witness testifying about a drug trafficking crime that occurred on August 24, 2001.  The district attorney filed a *nolle prosequi* "due to the Defendant never being identified."  Although the Amended Complaint alleges that Vasquez was an innocent man who was misidentified by Salbidrez, Am Compl. ¶ 49, the evidence does not support this allegation.  These documents provide no information about what actions were taken by either of the Defendants, no information about the adequacy of the investigation, and no information about the Defendants' involvement in the misidentification (or non-identification) of Mr. Vasquez.  Even assuming that Salbidrez was responsible for misidentifying Vasquez, the documents provide no basis for inferring any deliberately or recklessly wrongful actions by Defendants in the Vasquez case or in proving absence of mistake in the present case.

*(5) State v. Hiram Venegas.*  The grand jury indictment charges Venegas with drug trafficking crimes that occurred on August 3, 2000.  A trial witness list names Valdez as a may-call witness, among others, for the State.  An order of dismissal by the district court judge indicates that one count was dismissed by the court and that a jury returned a verdict of not guilty on the two remaining counts.  A handwritten note, apparently from a juror, questions whether a report states the defendant's last name and if so why the evidence bag indicates "Jiron LNU [last name unknown]."  The note from the juror is inadmissible hearsay.  The facts that Hiram Venegas was not convicted by the jury on two of the three counts, and that the trial judge dismissed the third count, do not support an inference that Defendant Valdez falsely identified Venegas.  These documents do not support the allegation in the Amended Complaint that "the police report falsely linked the Defendant to the crime by both his first and last names," Am.

17

Compl. ¶ 50, and they fail to establish anything about the actions of Defendants in the Venegas case.[8]  Also, these documents do not give rise to any reasonable inferences about Defendants' state of mind in the present case.

Plaintiff has not demonstrated how any of the documents in Plaintiff's Exhibit K, even if admissible in other respects, lead to reasonable inferences that the Defendants deliberately lied or acted in reckless disregard for the truth in identifying Plaintiff as the drug seller in connection with his arrest and prosecution, or performed a constitutionally inadequate investigation.  The Court agrees with Defendants that these exhibits are not admissible in this summary judgment procedure because they do not raise an inference of fact that is relevant to the issues in this case.  See Tanberg, 401 F.3d at 1169 (upholding exclusion of 404(b) evidence because "there is nothing in the record to indicate that the other two incidents in fact involved an excessive use of force").  Plaintiff concedes that he does "not know the details of each of these cases yet," Pl. Resp. to M to Strike (Doc. No. 104) at 11, referring to the five above-referenced cases.  As noted above, the Magistrate Judge resolved a discovery dispute by allowing Plaintiff to conduct discovery into Defendants' conduct in connection with the High River Operation, but there is no indication that Plaintiff conducted any further discovery into this area; in fact the evidence Plaintiff attempts to present in Exhibit K is far less compelling than the allegations in his Amended Complaint.  Plaintiff contends that the dismissals in two of these cases "explicitly mention misidentification," Pl. Resp. (Doc. No. 104) at 11, and thus support the inference that

_____

[8]  Plaintiff expert Lou Reiter, whose report is attached to Plaintiff's Surreply to the summary judgment motion, indicates that in the Hiram Venegas case, it was Officer Orlando Cordova who testified before the grand jury, not Defendant Valdez, and the acquittals were "due to evidence maintenance errors," not misidentification of the defendant.  Reiter Report at 8 (Doc. No. 103-3).  Also, Reiter agreed in his deposition that the documents indicate that Salbidrez was not involved in the Venegas case.  Reiter dep. at 26, Def. Ex. 1 (attached to Def. M. to Strike, Doc. No. 100).

Defendants deliberately or recklessly misidentified Plaintiff in this case.  Plaintiff argues:  "[t]hat seems like a lot of misidentifications in just two days," and supports the inference that "Defendants were making a practice of naming innocent people as criminals."  Pl. Resp. at 12. To the contrary, even the Moya and Vasquez cases, to which Plaintiff apparently refers, do not support a reasonable inference of deliberate or reckless misidentification.

Given the lack of similarity between the other acts evidence and the alleged misidentification in connection with Plaintiff's arrest, and the fact that the record does not permit a reasonable inference that either Defendant deliberately or recklessly misidentified any person in the other cases, the proffered evidence does not tend to establish Defendants' culpable state of mind in this case.  *See* Tanberg, 401 F.3d at 1170.  As in Tanberg, consideration of the other acts evidence would have the tendency to be misused to infer that Defendants often deliberately or recklessly misidentify "hapless innocents . . . the evidence is offered to prove propensity rather than for a proper purpose," and would be inadmissible under Rule 404(b).  Tanberg, 401 F.3d at 1170.[9]

---

[9]  Plaintiff's expert Lou Reiter reviewed the documents in Exhibit K.  Reiter Report (Doc. No. 103-3) at 4 (mentioning documents in Pl. Ex. K as among those he reviewed).  Although he couches his opinion in terms of "conscious choices," which may suggest deliberateness, Reiter carefully avoids opining either that he could determine that Defendants' conduct in the other cases was similar to the alleged conduct in this case, or that such prior conduct provided a reasonable inference that Defendants engaged in deliberate or reckless misidentifications.  In his deposition, Reiter was asked about the evidence in Exhibit K, and he agreed that the documents told him nothing about the Defendants' prior conduct.  *See* Reiter depo. at 23-33, Def. Ex. 1 (attached to Doc. No. 100).  *See also* Hart depo. at 58-68, Def. Ex. 2 (attached to Doc. No. 100) (in which Hart was asked about other cases, and admitted that documents provided him with no information about Defendants' investigation or conduct in other cases). Thus Plaintiff's expert's reports do not support the admissibility of Plaintiff's Exhibit K.

*Plaintiff's Exhibit L.*  This one-page exhibit is a list prepared by Plaintiff's counsel that purports to show 39 cases, including Plaintiff's case, indicted in Rio Arriba and Santa Fe Counties, in which Mario Salbidrez was a complaining witness.  All but five of the indictments are dated April 18 or 19, 2002.  Plaintiff offers this list to show that none of the cases "resulted in a disposition that punished the accused person for the crime charged," because each case was dismissed by the court or prosecutor, or the accused person was found not guilty at trial, or the accused person pled guilty but served no additional jail time beyond time already served.  Pl. Resp. (Doc. No. 97) at 18.  The list does not support an inference that Salbidrez deliberately or recklessly misidentified Plaintiff.  Whether any of these cases resulted in punishment of a defendant more than time already served is irrelevant to the state of mind of Defendants.  The fact that many of the defendants listed in Exhibit L pled guilty to the drug trafficking crimes with which they were charged indicates they were correctly identified.[10]

There is no reasonable inference from any documents in Plaintiff's Exhibits K or L, considered separately or together, that Defendants' misidentification of Plaintiff in this case involved any deliberate or recklessly-made falsehood in establishing probable cause.  Therefore, Defendants' Motion to Strike will be granted as to Plaintiff's Exhibits K and L.

**II.  Merits.**

*Probable Cause Standard.*  The Fourth Amendment of the United States Constitution protects persons against unreasonable seizures and provides that "no warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  "The Constitution does not guarantee that only

---

[10]  In their Reply to the summary judgment motion, Defendants point out that if the list is considered, at least 22 of the cases resulted in guilty pleas.  Def. Reply (Doc. No. 99) at 21.

the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979).  To establish a

Fourth Amendment claim of false arrest or malicious prosecution, a plaintiff must show that

there was no probable cause for his arrest and continued prosecution.  *See* Wolford v. Lasater, 78

F.3d 484, 489 (10th Cir. 1996).  Even if an initial arrest was supported by probable cause, a

violation could occur if later information eliminated probable cause.  *See* Pierce v. Gilchrist, 359

F.3d 1279, 1295-96 (10th Cir. 2004).  An officer is entitled to qualified immunity "for his

actions in seeking a warrant unless 'a reasonably well-trained officer in petitioner's position

would have known that his affidavit failed to establish probable cause and that he should not

have applied for the warrant.'"  Bruning v. Pixler, 949 F.2d 352, 356 (10th Cir. 1991) (quoting

Malley v. Briggs, 475 U.S. 335, 345 (1986).

     *State of Mind Requirement - Deliberate or Reckless Falsehood.*  A police officer would

violate a plaintiff's Fourth Amendment right to be free from unreasonable seizure resulting from

an arrest and prosecution "by knowingly or recklessly making a false statement in an affidavit in

support of an arrest . . . warrant, if the false statement were material to the finding of probable

cause."  Bruning 949 F.2d at 357 (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)); *see*

*also* Wolford, 78 F.3d at 489 (Fourth Amendment violated if officer knowingly, or with reckless

disregard for truth, included false statements in arrest warrant affidavit); Meyer v. Bd. of County

Com'rs, 482 F.3d 1232, 1240-41 (10th Cir. 2007) (circumstantial evidence that officer

deliberately lied in order to have person detained and committed to mental institution sufficient

to withstand summary judgment).[11]

Thus, an officer is not entitled to qualified immunity where a finding of probable cause was based solely on information the officer knew to be false "or would have known to be false had he not recklessly disregarded the truth," DeLoach v. Bevers, 922 F.2d 618, 621-22 (10th Cir. 1990); *see also* Beard v. City of Northglenn, Colorado, 24 F.3d 110, 114 (10th Cir. 1994); Bruning, 949 F.2d at 360; Stewart v. Donges, 915 F.2d 572, 582-83 (10th Cir. 1990).

> [N]o reasonably competent officer could believe an arrest legal where it was his deliberate or reckless deception that led the magistrate into issuing the warrant.

Beard, 24 F.3d at 115. Where there is "a genuine issue of material fact as to whether the officers, in preparing the warrant affidavit, were guilty of deliberate falsehood or reckless disregard for the truth," id., summary judgment based on qualified immunity must be denied.

At the summary judgment stage, a plaintiff alleging deception in an affidavit for an arrest warrant must make a "substantial showing" of deliberate falsehood or reckless disregard for truth and establish that, but for the dishonesty, the warrant would not have issued. Allen v. Cunningham, 51 F.3d 285, 1995 WL 143130 *5 (10th Cir. Mar. 27, 1995) (unpublished). *See also* Snell v. Tunnell, 920 F.2d 673, 698 (10th Cir. 1990) (claim of judicial deception requires substantial showing of deliberate falsehood or reckless disregard for the truth); Butler v. Elle,

---

[11]  The parties have not briefed the applicable standards for a Fourteenth Amendment violation, and Plaintiff all but concedes the claim (Plaintiff "understands that this Court is likely to summarily dismiss that claim"), Pl. Resp. at 2.  Under certain circumstances, continued prosecution and detention of a criminal defendant might give rise to a Fourteenth Amendment claim for deprivation of liberty without due process of law.  *See* Pierce v. Gilchrist, 359 F.3d at 1285-86 (due process claim might be viable where officer fabricated evidence that caused arrest, prosecution, and conviction of innocent person). The court declined to decide whether Fourth or Fourteenth Amendment analysis should be used because any difference in standards would not have affected the appeal.  Id. at 1286.  Similarly in the present case, the Court assumes any different standard would not affect the outcome of the summary judgment motion.

281 F.3d 1014, 1024 (9th Cir. 2002) (same); Bruning, 949 F.2d at 357 ("plaintiff must . . . produce specific evidence of the defendant's culpable state of mind").  An affirmative showing of dishonesty requires that plaintiff demonstrate the officer had "knowledge of a plaintiff's innocence or that a witness was lying." Snell, 920 F.2d at 698.  A plaintiff who alleges a police officer knowingly or recklessly made a false statement in an arrest warrant that was material to probable cause "must prove that the affiant in fact entertained serious doubts as to the truth of his allegations," Bruning v. Pixler, 949 F.2d at 357 (internal quotation marks omitted). "Recklessness may be inferred from omission of facts which are clearly critical to a finding of probable cause." Id.

   *Inadequate Investigation Standards.*  In Beard v. City of Northglenn, the Tenth Circuit held that "[t]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. . . .  To the contrary, it is generally considered to betoken negligence *at most.*"  24 F.3d at 116 (internal quotations omitted) (emphasis in original). Furthermore, the Tenth Circuit has held that there is no right to a full or exhaustive investigation once probable cause has been established.  Romero v. Fay, 45 F.3d 1472, 1477-78 (10th Cir. 1995).

   Ordinarily probable cause may reasonably be established by an eyewitness's statements, but if the officer knows of information that is readily available that would vitiate probable cause, an officer must pursue that information.  *See* Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1256 (10th Cir. 1998) (held unreasonable to rely on store security guard's account of alleged shoplifting incident when officers knew videotape depicted incident, and shopper produced

receipts for merchandise); Romero, 45 F.3d at 1476-77 (discussing cases that require officers to interview witnesses readily available at scene, investigate basic evidence, and otherwise inquire if a crime has been committed at all).  A failure to further investigate a case may be seen as more egregious where the officer had a long time to investigate the matter before seeking an arrest. See O'Connell v. City of Santa Fe, No. CV 03-979 BB (D.N.M. Mar. 9, 2005), slip op. at 20; Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (officers not free to disregard plainly exculpatory evidence; they have duty to conduct reasonably thorough investigation before arrest, where exigent circumstances are absent and law enforcement will not be unduly hampered if officers wait to obtain more facts before making arrest).

Discussion.  Defendants contend they are shielded by qualified immunity because the arrest and prosecution of Plaintiff were supported by probable cause.  Plaintiff concedes that both Defendants believed that the information they obtained was sufficient to establish probable cause for arresting Plaintiff.  See Def. UMF 18.  Plaintiff asserts, however, that Defendants engaged in deliberate falsehood or reckless disregard in procuring the warrant and continuing to prosecute him:  by lying about how they focused on the last name Lucero (or by lacking skepticism about the seller's real last name if the seller identified himself as Lucero); and by deliberately or recklessly misidentifying Plaintiff as the seller from his driver's license photograph.  Plaintiff also contends Defendants conducted a constitutionally inadequate investigation.

(1) Defendants Focused on Last Name Lucero.  Plaintiff claims that Defendants intentionally fabricated the story that the person who sold cocaine to Salbidrez identified himself as Adrian Lucero.  Plaintiff presents evidence that the Defendants gave different accounts of how

24

they focused on the last name Lucero:  either the CI gave the name to Defendants, or the seller himself gave the name to Salbidrez (with or without the middle initial "E.").  Plaintiff also argues that if the suspect told Salbidrez his last name was Lucero, it was reckless and objectively unreasonable to search the databases using that name because it is well known that drug sellers do not give their true last names.

Plaintiff presents the reports of his experts to show that it is unreasonable to develop probable cause by relying on self-identification by a drug dealer, and to confine a database search to a name given to an officer by a drug seller.[12]  *See* Darrell Hart report, Pl. Ex. (unnumbered) (Doc. 103-2) at 4 ("It is common knowledge that suspects involved in criminal enterprises often give false or misleading information, particularly their names.").  *See also* Lou Reiter report, Pl. Ex. (unnumbered) (Doc. No. 103-3) ¶ 17 at 11 ("suspect[s] rarely give their full name and usually use a moniker, first name only or street name").  *See also* Tomas Alarid report, Pl. Ex. (unnumbered) (Doc. No. 103-4) at 4 ("When an individual who sells narcotics is asked for his name, the agent knows he will not really identify himself.  Narcotics agents know that information from drug sellers, whatever they tell you, can be considered totally unreliable.").[13]

If Defendants had done nothing more to identify Plaintiff than to find and arrest a person with the name Adrian Lucero who had an Española address, who was the approximate age of the

---

[12]  Plaintiff failed to make his experts' reports part of the summary judgment record until he filed his Surreply (Doc. No.103).  Nevertheless, the Court will consider the reports on this issue.  Defendants have the reports, and even took the experts' depositions.  Thus, there is no unfair surprise, even though Defendants have not had an opportunity to respond to Plaintiff's argument about his experts.

[13]  The defense experts assume that the suspect gave the last name Lucero to Salbidrez, but they do not comment on whether it was reasonable to focus on the name Lucero, given the commonly-known unreliability of self-identification by persons involved in the drug trade.  *See* Rehm report at 6, Ex. A to Def. Ex. 3; Candelaria report at 3, Ex. A to Def. Ex. 4.  Thus, the defense experts' opinions are not relevant to this analysis.

25

suspect, and who had a prior drug arrest, the Court might agree that their actions were objectively unreasonable.  But Defendants went much farther.  Using the name Adrian Lucero, they obtained a color photograph of Plaintiff that both Salbidrez and the CI identified as the drug seller the next day after the controlled drug buy.  The photograph in the record, Def. Ex. 1(E), appears to be of good quality, and the eyewitness identifications were made within 24 hours of the incident by persons who had close contact with the suspect.  There is no evidence, or even an allegation, that the Defendants intentionally targeted Plaintiff.

Notwithstanding Plaintiff's experts' opinions, and considering the totality of the circumstances, the Court determines that it was objectively reasonable for the officers to focus initially on the name Adrian Lucero to conduct their database searches.  Focusing on the name Adrian Lucero does not indicate recklessness.  The next step in the process, the positive identifications of Plaintiff's photograph by both Salbidrez and the CI within 24 hours of the transaction, together with all the other corroborating factors, established probable cause that Plaintiff was the drug seller.

*(2) Misidentification of Plaintiff.*  Although Plaintiff's acquittal of the criminal charges does not necessarily mean he is actually innocent of the crime, it is a reasonable inference from the jury's not guilty verdict and from the judge's apology that Plaintiff was not the person who sold drugs to Salbidrez on October 10, 2001.  Similarly, just because Plaintiff was living with his sister in Albuquerque on October 10, 2001 and working for his aunt in Edgewood around that time does not establish that Plaintiff was not at the trailer park in Española on that day, but these facts, too, give rise to a reasonable inference that Plaintiff was not the seller.  It follows, for purposes of this summary judgment proceeding, that Plaintiff was "misidentified" by Salbidrez

26

and the CI.

Plaintiff argues that Salbidrez' misidentification of Plaintiff as the drug seller through his driver's license photo, and Salbidrez' misidentification of Plaintiff at Plaintiff's criminal trial, constituted deliberate or reckless falsehoods. Plaintiff argues that by acquitting him, the jury at the criminal trial disbelieved Salbidrez when he identified Plaintiff in court as the seller, and that by apologizing to Plaintiff, the criminal trial judge also indicated his disbelief of Salbidrez' testimony. Thus, Plaintiff argues that, taken together with the discrepancies in how Defendants came up with the last name Lucero, it is a reasonable inference that Salbidrez deliberately or recklessly misidentified Plaintiff on both occasions.

Plaintiff has not presented sufficient evidence of deliberate or reckless falsehoods by Defendants. The discrepancies about the source of the name Lucero are not material. Either the CI or the seller gave that name, and as discussed above Plaintiff has not shown that it was reckless police work to focus on that name initially. Furthermore, the discrepancies are not of a type that leads to a reasonable inference that Salbidrez deliberately misidentified Plaintiff. *Cf.* Wolgast v. Tawas Police Authority, 2006 WL 2583228 *4 (E.D. Mich. Sept. 7, 2006) (finding there was sufficient evidence of deliberate falsehood in affidavit in support of arrest warrant where officer averred he could identify voice of person who called in bomb threat, and that "officers focused their attention on the plaintiff and his son for no good reason.").

Plaintiff has attempted to show that Defendants misidentified numerous other suspects in other cases, and that Defendants were under pressure to bring many cases to make the High River Project look good in the eyes of the public. This attempt was utterly unsuccessful, because none of the proffered evidence is admissible, as discussed above in the section on the motion to

27

strike.

Plaintiff attempts to impeach the credibility of Salbidrez with evidence that a judge in another criminal case questioned Salbidrez' credibility at a hearing on a motion to suppress evidence.  This does not lead to a reasonable inference that Salbidrez deliberately misidentified Plaintiff in this case.  The other instance is remote in time from the events in this case, and the circumstances are dissimilar.  General attacks on a defendant's credibility are not sufficient to defeat qualified immunity.  A judge's finding that the testimony of a police officer is not credible is troubling, but Plaintiff has not overcome Defendants' properly supported motion for summary judgment by "identify[ing] affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

Bruning v. Pixler is instructive because it concerns alleged misidentification of the perpetrator of a crime.  The court concluded that the plaintiff had come forward with "evidence from which one could infer that Defendants recklessly made false statements in, and omitted material information from their affidavits."  Bruning, 949 F.2d at 357.  That evidence included the affidavit of an expert witness in which the expert opined that evidence within the defendants' knowledge clearly indicated that a portion of the affidavit in support of the arrest warrant was false.  The court did not rely solely on the expert witness' opinion; rather, it independently and carefully examined the same evidence the expert relied on, and concluded that there was sufficient evidence of false statements and omissions of material facts in the officers' arrest warrant affidavits to defeat summary judgment based on qualified immunity.  949 F.2d at 357-59.

29

Undermining an inference that Salbidrez was lying or reckless about the photo identification of Plaintiff as the seller is the undisputed fact that the CI also identified the seller from Plaintiff's photo.[14]  The CI's identification makes it less likely that Salbidrez intentionally or recklessly identified the photo.[15]  Plaintiff has not made a substantial showing of deliberate or reckless falsehood in the misidentification.

*(3) Adequacy of Investigation.*  Plaintiff also contends that Defendants performed an inadequate investigation.  Defendants admit they did not follow up by getting the phone records for the phone number the seller gave to Salbidrez.  They also did not pursue other sources to identify the seller such as the ownership or rental information for the trailer from which the seller emerged.  Additionally, they did not record license plate numbers of the cars parked in the vicinity of the trailer during the controlled buy, and did not made an audio recording of the drug buy or take photographs, and so forth.  The phone records were an obvious avenue of investigation that, in hindsight, would have led to potentially exculpatory information.  As we

---

[14]  It is interesting to note that one of the background facts that Plaintiff's expert Darryl Hart relies on in coming to his conclusion that the identification of Plaintiff was done recklessly is that Defendants "did not corroborate with the CI the identity of the suspect.  Even though the CI knew and had contact with the suspect, there was never any attempt to show the MVD photograph to him in an effort to verify the identity of the suspect . . .  There was no way to independently and directly corroborate who the suspect was -- except the confidential informant (CI)."  Hart Report (Doc. No. 103-2) at 5.  It is an undisputed fact in this proceeding that the CI identified Adrian E. Lucero as the seller from the same MVD photograph used by Salbidrez, on the same day, one day after the drug buy.  Def. UMF 16.  Thus, contrary to Mr. Hart's assumption, Defendants did corroborate the identity of the seller with the person who knew him best -- the CI.  Plaintiff's other expert Reiter does not make the same mistake as Mr. Hart with regard to the identification of the photo of Plaintiff by the CI.  Instead, he does not even mention this corroborating identification in his opinion on probable cause.

[15]  Plaintiff has not even presented evidence that Adrian Dominguez does not resemble him physically. The record contains only a photograph of Plaintiff, Def. Ex. 1(E), not one of Adrian Dominguez. If the two young men do look alike, it would be more likely that Salbidrez mistakenly misidentified Plaintiff. If they look very different, a deliberate or reckless misidentification would be more likely.  Plaintiff failed to present evidence that would support his position on this point.

know now, those records would have revealed that the phone was registered to Adrian

Dominguez, a man about the same age as Plaintiff, who had an address in Chimayo.  Some

children at the trailer park told Salbidrez that Adrian may have gone to Chimayo when Salbidrez

returned there after the initial drug buy, making it even more likely that Adrian Dominguez was

the true seller.  Plaintiff argues that the investigation was so deficient as to have been

unconstitutionally inadequate.

   Plaintiff asks rhetorically whether it would have been material information for the grand

jury to know that the phone number was registered to another Adrian, with the last name of

Dominguez:  "Who would the Grand Jury have indicted, in that case? . . . [D]id not Defendants

have the duty to follow up on the phone number given to Salbidrez by 'Adrian,' to learn that this

phone number was registered to Adrian Dominguez?"  Pl. Resp. at 22.  Plaintiff's evidence does

not meet the standard to prove the investigation was unconstitutionally inadequate.  Defendants

established probable cause as to Plaintiff, and they were not required to continue to investigate

or to look for evidence that might exculpate Plaintiff.  Plaintiff points out the many ways

Defendants could have furthered their investigation, but officers are not required to follow up on

every lead, even on the one (the phone records) that seems so obvious and could have made a

difference.  As to the other leads, Plaintiff has not shown that they would have led to a different

outcome.  It is true that the officers had plenty of time to investigate this case further before the

grand jury convened, and so it would have been feasible for Defendants to retrieve the phone

records, but Plaintiff has not demonstrated it was objectively unreasonable for the Defendants to

fail to pursue that avenue of investigation.

Plaintiff argues that officers are not entitled to qualified immunity where they establish probable cause using certain information where other evidence is readily accessible, citing Baptiste v. J.C. Penney Co., 147 F.3d 1252 (10th Cir. 1998).  However, Baptiste is distinguishable - it involved an arrest for shoplifting based on an account given by store security guards, where a videotape was readily available that showed no shoplifting occurred.  The phone records in this case are not clearly exculpatory in the same sense as the store videotape in Baptiste, which provided an exact replication of the alleged crime.  Nor are the phone records "plainly exculpatory" as that term was used in Kuehl v. Burtis, *supra*.  Here, the name of the person to whom the cell phone was registered, would not have definitively informed Defendants of the identity of the drug seller.  Both Plaintiff's and Defendants' expert witnesses have stated that the name of the phone subscriber would not indicate who was using the cell phone on October 10, 2001, or the actual identity of the suspect.  *See* Hart depo, Def. Ex. 6 (Doc. No. 99) at pp. 23-24; Reiter depo., Def. Ex. 7 (Doc. No. 99) at p. 59; Rehm report, Ex. A to Def. Ex. 3 (Doc. No. 99) ¶¶ 30, 34; Candelaria report, Ex. A to Def. Ex. 4 (Doc. No. 99) at 7.  As in Romero v. Fay, Defendants' failure to investigate the phone records "did not negate the probable cause" they had previously established to arrest Plaintiff, as there has been no "showing that [the officer's] initial probable cause determination was itself unreasonable."  45 F.3d at 1477-78.

Plaintiff has not established a constitutional violation based on inadequacy of Defendants' investigation.

**III. Conclusion.**

Defendants are entitled to qualified immunity.  Plaintiff has not demonstrated the violation of a constitutional right under the Fourth or Fourteenth Amendment.  Plaintiff has not

shown that his arrest and continued prosecution were not supported by probable cause. Defendants have supported their motion for summary judgment with undisputed evidence that their actions were objectively reasonable in seeking the arrest and prosecution of Plaintiff. Plaintiff failed to meet his burden of making a substantial showing of deliberate falsehood or reckless disregard for the truth. Plaintiff has also failed to show that the investigation performed by Defendants was constitutionally inadequate. Therefore, Defendants are entitled to summary judgment based on qualified immunity on all claims in the Amended Complaint.

THEREFORE IT IS ORDERED that Defendants' Motion to Strike Exhibits A-O of Plaintiff's Response (Doc. No. 100) is granted in part and denied in part. Plaintiff's Exhibits K and L are stricken; Plaintiff's Exhibits A- J and M-O are admissible.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on Qualified Immunity (Doc. No. 87) is granted.

A separate Summary Judgment will be entered contemporaneously with this Memorandum Opinion and Order granting judgment for Defendants on all claims in the Amended Complaint.

_____
SENIOR UNITED STATES DISTRICT JUDGE